*G. L. Dillaway*, for the plaintiff.

---

## WILLIAM DURNEY'S CASE.

Suffolk.    November 11, 1915. — January 24, 1916.

Present: RUGG, C. J., BRALEY, DE COURCY, CROSBY, & CARROLL, JJ.

*Workmen's Compensation Act*, Partial incapacity.

Under the provision of the workmen's compensation act contained in St. 1911, c. 751, Part II, § 10, that in case of partial incapacity the employee is to be paid "one half the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter," the amount which a partially incapacitated employee is entitled to recover is one half the difference between the average weekly wages that he actually earned before the injury under the conditions of the labor market then existing and the average weekly wages that he would be able to earn after the injury in a normal condition of the labor market, although because of dullness in trade he could not in fact earn so much at that time.

CARROLL, J.   The employee was injured September 28, 1912. His average weekly wages were then $22.   He was paid the maximum compensation under the statute until September 7, 1914.

St. 1911, c. 751.  On September 8, 1914, he returned to work, but was then partially incapacitated.  The Industrial Accident Board found that his weekly wages since September 8, were $13.20, and if it were not for dullness and depression in business, he would have received $15 a week.  The board also found that if the employee had not been injured, he "probably would have been able to earn only an average weekly wage of $19.40," and he was awarded partial compensation based on one half the difference between his average weekly wages before the injury ($22) and his average weekly wages since the injury ($13.20).

In deciding the question of the employee's average weekly wages before his injury, the board was right in considering what in fact his weekly earnings were before he was injured, and not what they would have been after the injury if he had not been injured, and in disregarding the circumstances that because of labor conditions, his weekly wages, if he had not been injured, now would be $19.40.  His weekly wages before he was injured were $22 and not a less amount, and it was unimportant, therefore, in passing on this question, to take into account what he would have earned if business conditions had not caused a general reduction in wages. St. 1911, c. 751, Part II, § 10, provides that in case of partial incapacity the employee is to be paid "one half the difference between his average weekly wages before the injury and the average weekly wages which he is able to earn thereafter."  St. 1914, c. 708, § 5, does not apply to this case.  The board found that the employee actually earned $13.20 a week since his return to work, but it also found that his wages "would have been $15, had it not been for dullness and depression in business."  This finding, we think, clearly shows that he was able to earn $15 a week, notwithstanding his injuries, but because of trade conditions he was able to earn only $13.20.  The statute contemplates compensation for diminished capacity to earn wages, and the injured employee, in common with others, must bear the loss resulting entirely from business depression.

Neither *Sullivan's Case*, 218 Mass. 141, nor *Septimo's Case*, 219 Mass. 430, supports the contention of the insurer or the ruling of the board.  *Sullivan's Case* decides that where an employee loses an arm, and from May to October is able to do the work of a one-armed man, but can secure no employment because of the

loss of his arm, although he makes diligent effort to obtain work, can obtain full compensation during that period. In that case the court calls attention to the English decisions where it is held that inability to get work because of the injury, is incapacity for work within the meaning of the act, "although a like inability resulting from some other cause, such as an altered condition of the labor market, would not be so."

In *Septimo's Case*, 219 Mass. 430, the employee lost all the fingers of both hands except the forefinger of the right and the little finger of the left hand. He returned to work for his former employer at $9 per week. The mill was shut down for three and five sevenths weeks, owing to the slackening up of business, and it was there contended that his earning ability was impaired by the dullness in business and not by his injury. The board found that he was not able to earn anything during the period the mill was closed, and in this court Crosby, J., said: "This is equivalent to a finding that the employee was totally incapacitated for work during that period."

In the case at bar there is a specific finding that the employee is now earning $13.20, instead of $15, because of dullness in trade. This is equivalent to a finding that his inability to earn $15 a week is caused not by his incapacity or his injury, but solely because of business conditions; and there is no claim made of total incapacity, as in the *Septimo Case*.

It follows that the decree of the Superior Court * should be modified and the American Mutual Liability Insurance Company ordered to pay to the plaintiff one half the difference between $15 and $22 per week during the period of partial incapacity, in accordance with the requirements of the statute; and so modified, the decree is affirmed.

*So ordered.*

*E. C. Stone*, for the insurer, submitted a brief.
No counsel appeared for the employee.

---

* Made by *McLaughlin*, J.