JEREMIAH DRISCOLL'S CASE.

Suffolk.    October 17, 1922. — December 2, 1922.

Present: RUGG, C.J., BRALEY, PIERCE, CARROLL, & JENNEY, JJ.

*Workmen's Compensation Act,* Partial disability.

At the hearing of an application by an employee for compensation for partial disability under G. L. c. 152, § 35, it appeared that the employee on July 29, 1920, while employed in a paper mill in Holyoke as a beater engineer, had received an injury which resulted in the amputation of his left arm above the elbow and had received compensation for the period of his total incapacity as well as that compensation specifically provided for the loss by severance of his arm above the wrist; that on October 25, 1920, he had returned to his former work, receiving the same compensation as before the injury; that he had left that employment in January, 1921; that on June 15, 1921, he sought re-employment with his former employer and no place was available for him. The employee testified that the work of a beater engineer required "a little bit" of skill, but not very much; that upon his return to work after his injury he had no extra help and did about the same work that he had done before, but had more assistance from his helpers; and that if he went to work as a beater engineer in another paper mill it would not take him very long to handle the job; that

he made no effort to get a place to work anywhere else, and, in answer to the question, "If you were able to do something of value for them, why weren't you able to do something of value to some other paper concern, any other paper concern?" he said, "Business was pretty bad then in the other mills; in fact they are pretty slack now. I figured it was useless for me to try to get work in them." He also stated that on account of his disability "he did not like to try to get a job in other mills and get laid off." There were other paper mills in Holyoke, and their beater engines all were practically the same. The Industrial Accident Board awarded partial compensation, basing a computation of the employee's earning capacity upon what he was earning as proprietor of a small store. *Held,* that

(1) The evidence was not sufficient to warrant the conclusion that the partial disability of the employee rendered it impossible for him to procure work as a beater engineer;

(2) The evidence did not furnish any basis for determination of what the employee could earn in his former occupation;

(3) To entitle an employee under G. L. c. 152, § 35, to compensation for partial incapacity, it must appear that the failure to obtain work is because of inability resulting directly from the injury and not from a depressed condition of the industry in which the employee had been engaged;

(4) A decree of the Superior Court, based on a decision of the Industrial Accident Board, that, although the employee was still able to do the work of a beater engineer for his former employer in whose mill it was easier for him to work than in that of any other paper manufacturer, "dullness in the trade and the difficulty of obtaining such a job for any one, made it impossible for a one-armed man . . . to obtain such work" although it did not appear that he had made "specific attempts to find employment as a beater engineer in any other mill," and that " . . . the employee should not be prejudiced for failure to go through the empty form of making application for work," was reversed, with direction that a decree be entered in favor of the insurer.

CERTIFICATION to the Superior Court, under the provisions of the workmen's compensation act, of a decision of the Industrial Accident Board, ruling and finding that Jeremiah Driscoll, who had received injuries on January 29, 1920, which arose out of and were received in the course of his employment by Crocker-McElwain Company, was entitled to compensation for partial incapacity at the rate of $16 per week from June 15, 1921, to be continued subject to the provisions of the act.

In the Superior Court, the case was heard by *Sanderson,* J. Material facts are described in the opinion. By order of the judge, a decree was entered in accordance with the decision of the board; and the insurer appealed.

The case was submitted on briefs.

*G. Gleason,* for the insurer.

*J. R. Callahan & H. J. Lacey,* for the employee.

JENNEY, J. This is an application for compensation for partial disability under the workmen's compensation act. G. L. c. 152, § 35. This section provides for weekly payments while there is partial incapacity for work resulting from an injury arising out of and in the course of the employment. Inability to secure work arising from any other cause is not the basis of compensation. The provision is based on the existence of an admitted capacity to labor. The measure of compensation is the difference between the average weekly wages before the injury and those which the employee is able to earn thereafter. *Johnson's Case*, 242 Mass. 489. Where total incapacity exists other statutory provisions are in effect. G. L. c. 152, § 34.

On July 29, 1920, Jeremiah Driscoll received an injury, arising out of and in the course of his employment, which resulted in the amputation of his left arm above the elbow. He has received compensation for the period of his total incapacity and that specifically provided for the loss by severance of his arm above the wrist. G. L. c. 152, §§ 34, 36 (b).

On October 25, 1920, he returned to his former work — that of a beater engineer in a paper mill — receiving the same compensation as before his injury. He left that employment in the following January for reasons that do not affect this decision. On June 15, 1921, he sought re-employment but at that time no place was available for him. He is now the proprietor of a small store. Before the injury and also after his return to work, he was paid $46.50 weekly. The board ordered payment of $16 weekly from June 15, 1921, when he offered to return to work, determining that his earning capacity was $22.50. The only evidence supporting this finding related to what he was able to withdraw from his business. A decree was entered in the Superior Court for the payment at that rate, subject to the provisions of the statute. The insurer appealed.

The Industrial Accident Board in January, 1922, found that although the claimant was still able to do the work of a beater engineer for his former employer in whose mill it was easier for him to work than in that of any other paper manufacturer, "dullness in the trade and the difficulty of obtaining such a job for any one, made it impossible for a one-armed man . . . to obtain such work," although it did not appear that he had made "specific

attempts to find employment as a beater engineer in any other mill," and further stated that " . . . the employee should not be prejudiced for failure to go through the empty form of making application for work."

This finding is wholly based on the testimony of the employee, who testified that the work required "a little bit" of skill, but not very much; that upon his return to work after his injury he had no extra help and did about the same work that he had done before, but had more assistance from his helpers; and that if he went to work as a beater engineer in another paper mill it would not take him very long to handle the job. He further stated that he made no effort to get a place to work anywhere else, and, in answer to the question "If you were able to do something of value for them, why weren't you able to do something of value to some other paper concern, any other paper concern?" he said, "Business was pretty bad then in the other mills; in fact, they are pretty slack now. I figured it was useless for me to try to get work in them." He added that on account of his disability "he did not like to try to get a job in other mills and get laid off." It appeared that there were other paper mills in Holyoke and that the beater engines in all were practically the same.

The evidence was not sufficient to warrant the conclusion that the partial disability of the employee rendered it impossible for him to procure work as a beater engineer. No effort was made to obtain such work at other mills in the same city; and on this record it ought not to be found that an employee who, although handicapped by the loss of an arm, was able to perform the services rendered before the injury, could not obtain work, where no attempt had been made to secure it. The fact that business had been bad and still continued to be slack, was not sufficient to excuse him from attempting so to do, nor to warrant a conclusion that he could not get employment at his former occupation. The evidence does not furnish any basis of determination as to what he could earn therein.

It must appear that the failure to obtain work is because of inability resulting directly from the injury and not from a depressed condition of the industry in which the employee had been engaged. *Sullivan's Case*, 218 Mass. 141. *Durney's Case*, 222 Mass. 461. *Capone's Case*, 239 Mass. 331. *Johnson's Case, supra.*

As the injury did not prevent the employee from pursuing his former occupation and as the evidence did not justify the finding that he could not secure work in it, employment in another industry or in a business of his own did not furnish a measure of compensation, and *Barry's Case,* 235 Mass. 408, does not control. *Capone's Case, supra.*

The decree must be reversed, and one entered in favor of the insurer.

*So ordered.*